

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/02/2008

| | | |
|---|---|---|
| IN RE: | § | |
| JOHN M. SHEFFIELD, GLORIA D. SHEFFIELD | § § | CASE NO: 08-31555 |
| Debtor(s) | § § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION

### Background

John and Gloria Sheffield filed a chapter 13 bankruptcy petition on March 6, 2008. On March 17, 2008, they timely proposed a chapter 13 plan and on May 27, 2008, they amended their proposed plan. The Court held a confirmation hearing on June 24, 2008.

The amended plan proposed that the Sheffields would pay $166,680.00 to the chapter 13 trustee over a 60 month term. The initial two monthly payments would be in the amount of $2,575.00. Thereafter, monthly payments would be in the amount of $2,785.00.

The plan provided for payment of the Sheffield's attorneys' fees, a modest claim to the IRS, payment of two car notes, and payment for some household furnishings. The amounts to be paid on these items consumed approximately 34% of the proceeds payable to the trustee. The balance of the funds was proposed to be paid to various entities holding liens against the Sheffield's home.

Of the amounts proposed to be paid to holders of liens on the home, the Sheffields proposed to pay $9,242.42 to RETax Funding, L.P. This amount was comprised of $6,933.35 of principal and $2,309.07 of interest. Interest was calculated at a 12% annual rate in the proposed plan. RETax was the holder of a Real Estate Lien Note executed by the Sheffields on August 16,

2007, in the original principal balance of $8,267.51. The original note provided for a non-default interest rate of 15% and monthly payments over 120 months.

The origin of the promissory note is critical to this Court's decision. RETax's proof of claim reflects that RETax had advanced funds to the Sheffields pursuant to § 32.01 of the Texas Property Tax Code. The proof of claim reflects that RETax paid ad valorem taxes, penalties, and interest to Fort Bend County Municipal Utility District No. 116 in the amount of $2,590.21 for the 2006 tax year and paid ad valorem taxes, penalties, and interest to Fort Bend County in the amount of $4,163.65 for the 2006 tax year. The balance of $1,513.65 is presumably for closing costs and fees associated with the RETax loan. In exchange for advancing the funds, RETax received from the Sheffields a promissory note and a tax lien deed of trust[1]. When RETax paid the tax debts, the taxing authorities transferred their tax liens to RETax.

By the time of confirmation, the Sheffields had resolved all objections to confirmation, save an objection filed by RETax. RETax's objection relies on § 511 of the Bankruptcy Code and asserts that RETax is entitled to retain its 15% interest rate after confirmation. RETax argues that it holds a tax claim. If it is correct, then § 511 would bar a modification of the RETax interest rate. RETax relies for its argument on a well-reasoned opinion by Judge Lynn of the Northern District of Texas. *See In re Davis,* 352 B.R. 651 (Bankr. N.D. Tex. 2006).

## Section 511

Section 511 is a new section of the Bankruptcy Code added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Little has been written about the new section. *In re Davis* appears to be the only opinion that deals with the applicability of § 511 to a claim asserted by a non-governmental entity. The entirety of § 511 reads as follows:

---

[1] The document is entitled "Tax Lien Deed of Trust." The first page, second paragraph of the deed of trust reflects that it is "a transfer tax lien pursuant to section 32.06 of the Texas Tax Code."

> *§ 511. Rate of interest on tax claims*
>
> *(a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.*
>
> *(b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.*

Put simply, a chapter 13 confirmed plan may not modify the interest rate payable on a tax claim.

## Analysis

Judge Lynn reaches two threshold legal conclusions, with which this Court has no disagreement. The first is that a § 511 claim need not be held by a governmental unit. *Id.* If a tax claim is transferred to a private entity, then the private entity may rely on the rights granted by § 511. *Id.* Nothing in the statute limits the application of § 511 to a governmental unit. The provision refers to a "creditor" rather than a governmental unit. *Id.* If the governmental unit transfers its tax claim, then the assignee of the tax claim may rely on § 511.

The second major conclusion reached by Judge Lynn is that the anti-modification provision of § 1322(b)(2) does not apply to a Texas tax lien. *Id.* Section 1322(b)(2) bars a debtor's plan from modifying the rights of holders of secured claims that are secured by a debtor's principal residence, but only if the secured claims *arise under a security interest*. 11 U.S.C. § 1322(b)(2).[2] Accordingly, with certain exceptions not relevant here, a debtor may not modify the rights of a traditional mortgage holder. *Rake v. Wade,* 119 S.Ct. 2187, 2190 (1993).

---

[2] Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim *secured only by a security interest* in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (emphasis added).

However, RETax's claim is not protected by § 1322(b)(2) because its claim does not arise from a "security interest." The Bankruptcy Code defines a security interest as a "lien *created* by an agreement." 11 U.S.C. § 101(51) (emphasis added). The Bankruptcy Code recognizes that there are two types of secured claims. These were explained by the Supreme Court as follows:

> The question before us today arises because there are two types of secured claims: (1) voluntary (or consensual) secured claims, each created by agreement between the debtor and the creditor and called a "security interest" by the Code, 11 U.S.C. § 101(45) (1982 ed., Supp.IV), and (2) involuntary secured claims, such as a judicial or statutory lien, see 11 U.S.C. §§ 101(32) and (47) (1982 ed., Supp.IV), which are fixed by operation of law and do not require the consent of the debtor.

*U.S. v. Ron Pair Enterp.,* 109 S.Ct. 1026, 1029-30 (1989).

RETax's lien is not a "security interest" because it was not *created* by an agreement. The *transfer* of the tax lien was consensual, but the *creation* of the tax lien was not. Texas property tax liens arise by statute. Tex. Prop. Tax Code, § 32.01(a). Because RETax relies on the tax lien that was transferred by the taxing authorities, *Davis* correctly holds that the lien was created by statute rather than by agreement. *Id.* In accordance with *Ron Pair* and *Davis,* we hold that RETax holds a secured claim, but does not hold a security interest.[3]

However, at confirmation[4], the Sheffields raised an argument that is not addressed by *In re Davis.* The Sheffields argue that RETax holds only a tax lien and does not hold a tax claim. Because § 511 applies to tax claims rather than to tax liens, the Sheffields argue that it is inapplicable to their situation. This Court agrees.

---

[3] The Court recognizes that the Sheffields executed a deed of trust. However, the deed of trust (as attached to RETax's proof of claim) reflects that it "is a transfer tax lien". Because § 101(51) requires the Court to determine whether the lien was consensually created, the existence of the deed of trust does not alter the Court's conclusion.

[4] Although RETax objected to confirmation, it failed to appear at the confirmation hearing. RETax had notice of the hearing. The Court announced that it would not confirm the plan without understanding how the plan complied with the confirmation requirements set forth in the Bankruptcy Code. At confirmation, the Sheffield's counsel fully argued the issues set forth in this memorandum opinion.

As the Sheffield's counsel argued at confirmation, the Texas Property Tax Code mandates that the property taxes be paid in order for RETax to be assigned the tax lien. The relevant portions of § 32.06 of the Texas Property Tax Code read as follows:

> *A person may authorize another person to pay the delinquent taxes imposed by a taxing unit on the person's real property by filing with the collector for the unit…*
>
> *A tax lien may be transferred to the person who pays the taxes on behalf of the property owner…*
>
> *If a transferee authorized to pay a property owner's taxes pursuant to Subsection (a-1) pays the taxes and any penalties and interest imposed, the collector shall issue a tax receipt to that transferee. In addition, <u>the collector or a person designated by the collector shall certify that the taxes and any penalties and interest on the subject property and collection costs have been paid by the transferee on behalf of the property owner and that the taxing unit's tax lien is transferred to that transferee.</u>*

TEXAS PROPERTY TAX CODE, § 32.06 (Vernon 2008).

Accordingly, the tax lien is only transferred if the taxes have been paid. In this case, RETax's proof of claim reflects that it actually paid the taxes. RETax's payment of the tax claim extinguished the tax claim. RETax acquired a new, non-tax claim when the Sheffields executed a promissory note in RETax's favor. The Sheffields also executed a deed of trust that secured the promissory note with the tax lien. Accordingly—under Texas law—the tax claim has been paid, a new non-tax claim in favor of RETax has arisen, and the new claim is secured by the tax lien.

Bankruptcy law has long recognized the difference between claims and liens. As the Supreme Court recognized in *Dewsnup:*

> This result appears to have been clearly established before the passage of the 1978 Act. Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so. *See Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy");

> *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor *in rem*").

*Dewsnup v. Timm,* 112 S.Ct. 773, 778 (1992).

Congress chose to write § 511 only to address tax claims. It did so in the context of clearly stated precedent that a claim is not the same as a lien and vice versa. When Congress amends the bankruptcy laws, it does not write "on a clean slate." *Dewsnup* 112 S.Ct. at 778. It would be inappropriate to change § 511's plain words, with well-established precedential meaning, to alter Congressional intent.

Judge Lynn's *Davis* opinion notes that courts often "focus on the nature of the underlying debt, not the identity of the holder of the claim, in determining a party's rights with respect to a claim . . . " *In re Davis*, 352 B.R. at 655. This Court agrees. Judge Lynn cites cases dealing with § 523 discharge objections and the rights of parties holding assigned or transferred claims. However, in § 523 and assignment cases, the underlying debt has not been extinguished by payment. Here, RETax *has* extinguished the underlying debt. RETax did not purchase the taxing unit's claim. RETax *paid* the claim. RETax's claim arises from the *promissory note* executed by the Sheffields. RETax's claim *does not* arise from the rights of a third-party that RETax purchased. The Court agrees that under many code provisions, including § 511, courts must examine the underlying nature of a debt rather than the face of the current holder of the debt. The identity of the claim holder is irrelevant to the Court's holding. The Court should focus on the underlying debt. Here, the tax claim has been paid. The underlying debt is the promissory note executed by the Sheffields.

The Court recognizes that this conclusion means that § 32.06 claims do not receive the benefit of § 511. Nevertheless, this conclusion does not eviscerate § 511. A state taxing

authority may assign its tax claims if state law so provides. Hypothetically, a state could authorize the sale of its tax receivables to a third party. That third-party assignee would presumably be protected by § 511. But, that is not the structure that this State has chosen for the private collection of its property taxes.

## Conclusion

RETax's objection to confirmation is overruled. By separate order, the Court has confirmed the Sheffield's May 27, 2008 plan.

SIGNED <u>July 2, 2008.</u>

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE